UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 09-60588-CIV-COHN/SELTZER

CHETU, INC.,

    Plaintiff,

vs.

MOHAMED SAFIR SALIHU, et al.,

    Defendants.
_____/

### ORDER REGARDING SET-OFF AS TO JURY VERDICT AND PERMANENT INJUNCTIVE RELIEF

**THIS CAUSE** is before the Court on parties' post-trial submissions: Pro-Tech Defendants'[1] Submission of Proposed Terms for Order Entering Permanent Injunction [DE 154], Pro Tech Defendants' Submission of Their Set-Off Rights Related to Co-Conspirator Safir Salihu's Stipulated Settlement [DE 155], Plaintiff's Post-Trial Brief Regarding Set-Off as to Jury Verdict and Permanent Injunctive Relief [DE 156] and Plaintiff's Proposed Terms for Order Entering Permanent Injunction [DE 159-1]. The Court has considered these submissions, the record in this case, and is otherwise advised in the premises.

### I. BACKGROUND

Plaintiff alleged that the Pro Tech Defendants entered into a civil conspiracy with Co-Defendant, Mohamed Safir Salihu, to misappropriate Plaintiff's trade secrets and tortiously interfere with Plaintiff's business relationships. Prior to trial, Plaintiff

---

[1] The "Pro Tech Defendants" consist of Defendants Neeraj Kumar a/k/a Neeraj Thakur ("N. Kumar"), Bhushan Kumar ("B. Kumar") and Pro Tech Software Solutions, Inc. ("Pro Tech").

entered into a settlement agreement with Mr. Salihu. See DE109. Thereafter, Plaintiff proceeded to trial against the Pro Tech Defendants.

The jury found that Plaintiff proved that the Pro Tech Defendants and Mr. Salihu entered into a civil conspiracy and that Defendant N. Kumar breached certain agreements he entered into with Plaintiff. See DE 149. The jury found that these actions caused damages to Plaintiff in the amount of $179,586 and attributed $122,086 of these damages to the actions of Salihu. Id. The jury also awarded Plaintiff $100,000 in punitive damages, $30,000 of which was related to Salihu's conduct. Id. Finally, the jury found that Pro Tech is vicariously liable for the actions of Salihu. Id.

The Pro Tech Defendants argue that they are entitled to a Final Judgment set off by the amount agreed to in the settlement between Salihu and Plaintiff. Plaintiff contends that the Pro Tech Defendants have waived their rights to a set-off because they did not raise this defense in a timely fashion. In the alternative, Plaintiff argues if the Court does set off the Final Judgment, the set-off "should be limited to the consideration, if any, paid to Chetu by Salihu at the time of the jury verdict." DE 156 at 3.

With respect to permanent injunctive relief, the Pro Tech Defendants argue that "a Permanent Injunction against the Defendant from ever working for, employing, or performing services for any of the Plaintiff's clients is unnecessarily restrictive, against public policy, inequitable and incapable of fair and reasonable enforcement." DE 154 at 2. The Pro Tech Defendants, however, acknowledge that they "are willing to stipulate to a permanent injunction which would prohibit the Pro Tech Defendants from doing any future business with the Affected Clients." The Pro

Tech Defendants define the Affected Clients as Sentegra, LLC, Prographics Sportwear and Party Favors, Inc., Etran, LLC/3DATM/POS Services, Inc. See DE 154 at 2.

A review of Plaintiff's Proposed Terms for Order Entering Permanent Injunction [DE 159-1] reveals that there is no dispute on this issue.  Therein, Plaintiff seeks an injunction directing the Pro Tech Defendants "to permanently refrain from providing goods or services to Sentegra, LLC, Prographics Sportwear and Party Favors, Inc., Etran, LLC or their respective principals, officers, associates, agents, parents, subsidiaries, or assigns." DE 159-1 ¶ 3.

## II. ANALYSIS

It is well-established that "a plaintiff who has recovered any item of damage from one coconspirator may not again recover the same item from another conspirator; the law, that is, does not permit a plaintiff to recover double payment." Zenith Radio Corp. v. Hazeltine Research, 401 U.S. 321, 348 (U.S. 1971); see also Blasland, Bouck & Lee v. City of N. Miami, 283 F.3d 1286, 1295 (11th Cir. 2002) ("the purpose of a setoff is to prevent a party from recovering twice for the same damages").  The Florida Legislature has codified this principle in Fla. Stat. § 46.015, which provides, in pertinent part:

> (1) A written covenant not to sue or release of a person who is or may be jointly and severally liable with other persons for a claim shall not release or discharge the liability of any other person who may be liable for the balance of such claim.
>
> (2) At trial, if any person shows the court that the plaintiff, or his or her legal representative, has delivered a written release or covenant not to sue to any person in partial satisfaction of the damages sued for, the court shall set off this amount from the amount of any judgment to which the plaintiff would be otherwise entitled at the time of rendering judgment.

Fla. Stat. § 46.015(1)-(2).

3

As a threshold matter, Plaintiff argues that "Pro Tech Defendants should be deemed to have waived a set-off" because "there are no affirmative claims and no affirmative defenses that regard the relief sought." DE 156 at 3. The Court disagrees. The Eleventh Circuit has found that "under Florida law . . . the rule of waiver does not apply to [a set-off in] tort actions." KMS Rest. Corp. v. Wendy's Int'l, Inc., 194 Fed. App'x 591, 598 (11th Cir. 2006); accord Felgenhauer v. Bonds, 891 So. 2d 1043, 1045 (Fla. 2d DCA 2004) ("[I]n tort actions allowing for a set-off under sections 768.041 and 46.015, set-off is not an affirmative defense to be considered by the jury but is a determination regarding damages to be made by the court after the verdict is rendered."). Indeed, the language of Section 46.015 is mandatory and states that "the court shall set off this amount" if "any person shows the court" that the plaintiff has entered into a settlement agreement "in partial satisfaction of the damages sued for." Fla. Stat. § 46.015(2).[2]

Next, Plaintiff argues that "set-off should be limited to the consideration, if any, paid to Chetu by Salihu at the time of the jury verdict." DE 156 at 3. Conversely, the Pro Tech Defendants contend that the set-off amount should be "the full amount agreed upon pursuant to the settlement agreement." DE 155 at 4.

Plaintiff points to case law in support of its position. See DE 156 at 4 (citing BUC Int'l Corp., 517 F.3d at 1278 ("Thus, MLS and IYC are entitled to a reduction in the judgment against them by the amounts received by BUC in settlement of claims for the same injury.") (emphasis added); J.R. Brooks & Son v. Quiroz, 707 So. 2d

---

[2] In any event, the Pro Tech Defendants could also proceed under Rule 60(b) of the Federal Rules of Civil Procedure because their request was raised after trial and it is equitable in nature. See BUC Int'l Corp. v. Int'l Yacht Council Ltd., 517 F.3d 1271, 1277 n.5 (11th Cir. 2008). Plaintiff concedes as much in its submission. See DE 156 at 3 n.2.

4

861, 863 (Fla. 3d DCA 1998) (stating "damages for which the nonsettling defendant is ultimately responsible must be reduced pro tanto by the <u>amount obtained</u> from any settlement previously entered into between the injured party and the person who actually committed the negligent act") (quotation omitted) (emphasis added)).[3]  The Court acknowledges that the language cited by Plaintiff, on its face, supports the Plaintiff's position.  Upon closer inspection, it is clear that the courts in these two cases were not presented with nor did they analyze the specific question before this Court.[4]

On the other hand, the Pro Tech Defendants rely on Fla. Stat. § 46.015(2) to argue that "a set off shall be calculated by the amount 'the plaintiff would [be] otherwise [ ] <u>entitled</u> [ ] at the time of rendering judgment.'  The Florida legislatures [sic] when drafting Florida Statute 46.015(2), specifically refrained from using the word 'paid' or 'received' at the time of rendering judgment." DE 155 at 4 (quoting Fla. Stat. § 46.015(2) (emphasis added by Pro Tech Defendants)).  The Pro Tech Defendant's argument also appears persuasive at first glance, however, a review of the full text of the statute reveals that such persuasion is based on sleight-of-hand.

---

[3]  Plaintiff also cites the Supreme Court's decision in <u>Zenith Radio Corp.</u>, 401 U.S. 321, and <u>McKenna v. Austin</u>, 134 F.2d 659 (D.C. Cir. 1943); however, these cases are not on-point.  <u>Zenith Radio Corp.</u> dealt with a settlement reached in 1957 which was understood to be compensation for "damages up to the date of the release." <u>Zenith Radio Corp.</u>, 401 U.S. at 349.  Accordingly, the Supreme Court found that the defendant could not raise a defense of payment for damages the plaintiff sustained in 1959-1963.  <u>See id.</u>  In <u>McKenna</u>, the "sole question" before the court was whether a release operated to discharge the claims raised against a non-settling defendant. <u>McKenna</u>, 134 F.2d at 660.

[4]  The Court notes that if the issue discussed herein is not raised, a court would have no reason to distinguish between the amount received by the plaintiff and the amount stated in the settlement agreement.  In other words, if the settlement amount is paid in-full, there is no difference between the amount "stated" in a settlement agreement and the amount "received" or "obtained" by a plaintiff.

This is because the phrase "otherwise entitled at the time of rendering judgment" does not refer to the amount of the set-off. Instead the phrase refers to the "amount of any judgment" to which a plaintiff is "otherwise entitled" prior to applying the set-off. See Fla. Stat. § 46.015(2) ("the court shall set off this amount from the amount of any judgment to which the plaintiff would be otherwise entitled at the time of rendering judgment").

Notwithstanding, the Court concludes that the amount of the set-off should be the amount stated in Plaintiff's settlement agreement with Mr. Salihu rather than the amount paid to Plaintiff at the time of the judgment. The Court reaches this conclusion for three reasons.

First, this construction comports with a plain reading of the statute. Section 46.015 refers to the term "written release" rather than to any amounts actually paid by a settling defendant or received by a plaintiff.[5] The Court finds that basing the set-off on an amount paid, rather than simply the amount stated in the settlement agreement, is a much more complex concept that would require additional language in the statute. Presumably the legislature would need to provide additional guidance

---

[5] In addition, the Court's construction is consistent with another statute, Fla. Stat. § 768.31, which deals with "[c]ontribution among tortfeasors." Section 768.31 states the following:

> When a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury or the same wrongful death:
>
> (a) It does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide, but it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant, or in the amount of the consideration paid for it, whichever is the greater; . . . .

Fla. Stat. § 768.31(a)(emphasis added).

regarding situations, as discussed below, where a settling defendant has made only a partial payment at the time a judgment is entered.

Second, using the amount stated in a settlement agreement furthers one of the main purposes of a set-off, which "is to prevent a party from recovering twice for the same damages." Blasland, Bouck & Lee, 283 F.3d at 1295.  This purpose could be frustrated under Plaintiff's interpretation of Fla. Stat. § 46.015.  By way of example, let's say that a defendant enters into a settlement agreement for $100,000 and has paid $20,000 of that amount at the time a judgment is entered against the non-settling defendants.  Under Plaintiff's theory, the set-off would be limited to $20,000.  What then?  It may be that the settling defendant fully intends, and in fact does pay the additional $80,000, which runs the risk that plaintiff will be overcompensated.  This risk is particularly acute since a settling defendant may not continue to follow the litigation.  In addition, it is possible that the court and the non-settling defendants may not gain knowledge of any additional payments made after the judgment, since such payments are pursuant to, what is often, a private settlement agreement between the plaintiff and the settling defendant.

Third, the Court finds that this interpretation of the statute facilitates the administration of Fla. Stat. § 46.015.  Even setting aside any nefarious scenarios in which a plaintiff obtains double payment, limiting the set-off to the amount "paid" at the time judgment is entered creates administrative difficulties.  For example, is a court required to enter an amended judgment each time a plaintiff receives another payment from a settling defendant?  If so, what happens if the plaintiff receives an additional payment from a settling defendant after the non-settling defendants have already satisfied the entire judgment entered against them?

Plaintiff contends that limiting a set-off to the amount paid to a plaintiff at the time judgment is rendered "makes sense." In support of this assertion, Plaintiff reasons as follows:

> There is no certainty that a structured settlement, for example, will yield the full amount promised. Settlement agreements are, regrettably often, made to be broken. Further, promises of future payments call into question calculations of present value, and other risk factors for the likelihood of default. Promised sums fail to account, then, for the cost of collection and enforcement in the event of a default. There is simply no reliable comparison between a dollar actually paid in a settlement, to one promised.

DE 156 at 4-5. The same arguments apply, with even greater force, to judgments which are not freely-entered into by the parties. Under the Court's interpretation, a plaintiff's "right" or "entitlement" to recovery of the amount agreed to in a settlement agreement is unimpaired. Using the same example from above, a settlement agreement for $100,000 will result in a set-off of $100,000 even if the settling defendant has only paid $20,000 at the time judgment is entered against the non-settling defendants. Nevertheless, the plaintiff will have avenues to seek the remaining $80,000 from the settling defendant such as a motion to enforce the settlement agreement.

In light of the foregoing, the Court will set off the Final Judgment in this case in an amount equal to the amount Mr. Salihu agreed to pay in the settlement agreement he entered into with Plaintiff, however, the set-off will be no more than $152,086, the amount of damages attributed to Mr. Salihu's actions.

## III. CONCLUSION

It is hereby **ORDERED AND ADJUDGED** as follows:

1. Plaintiff shall submit settlement agreement entered into with Mr. Salihu for an *in camera* review on or before **April 6, 2010**.

2. The Court shall enter a Permanent Injunction by separate Order.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida, on this 2nd day of April, 2010.

_____
JAMES I. COHN
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of record via CM/ECF